IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Fort Yates Public School District #4, | ) | |
| | ) | Case No. 1:12-cv-135 |
| Plaintiff, | ) | |
| | ) | **ORDER REMANDING CASE TO** |
| -vs- | ) | **TRIBAL COURT AND DISMISSING** |
| | ) | **AS MOOT DEFENDANT JAMIE** |
| Jamie Murphy for C.M.B. (a minor) and | ) | **MURPHY'S MOTION TO DISMISS** |
| Standing Rock Sioux Tribal Court, | ) | |
| | ) | |
| Defendants. | ) | |

### I.     Introduction and Summary of Holding

Plaintiff Fort Yates Public School District #4 (hereafter "School District) filed a

Complaint against Jamie Murphy for C.M.B. (a minor) and Standing Rock Sioux Tribal Court

seeking declaratory relief in the form of an Order declaring that the Standing Rock Sioux Tribal

Court lacks jurisdiction over public school districts and school district employees acting in their

official capacity, and (b) an injunction prohibiting tribal court from adjudicating the claims

brought against the school by Jamie Murphy on behalf of her daughter C.M.B.  This Court

granted the School District's motion for a temporary restraining order, and dismissed the

Standing Rock Sioux Tribal Court under the doctrine of sovereign immunity (Doc. #8).

Pending before the Court is a motion by Defendant Jamie Murphy to dismiss this action

under Fed. R. Civ. P. 12(b)(7) (Doc. #13).  Murphy asserts that the action is "flawed" because

she is not an appropriate party since C.M.B. was no longer a minor at the time the School District

commenced this action.

The limited jurisdictional issue before this Court is whether a state political subdivision

may be subjected to suit in a tribal forum when it enters into a consensual agreement with a tribe

to operate a school on tribal trust land.  This Court finds that <u>Montana v. United States</u>, 450 U.S. 544 (1981) is inapplicable when determining the adjudicatory authority over nonmembers who consensually agree to operate and conduct business in conjunction with the tribe on tribal trust land.  Even if <u>Montana</u> applies, the result would be the same.  The "first exception" in <u>Montana</u> allows tribal courts to exercise jurisdiction when a nonmember has entered into a consensual relationship with a tribe or its members, through commercial dealing, contracts, leases, or other arrangements.  This case fits squarely within the plain language of the exception.  This case is hereby DISMISSED and remanded to the Standing Rock Sioux Tribal Court.

## II.     Factual and Procedural Background

The School District is a political subdivision of the State of North Dakota.  <u>Bismarck Public School Dist. No. 1 v. State By and Through North Dakota Legislature</u> , 511 N.W.2d 247, 251 (N.D. 1994); <u>See</u> <u>Baldwin v. Bd. of Educ. of City of Fargo</u>, 33 N.W.2d 473, 481 (N.D. 1948) (North Dakota's Constitution recognizes school districts as political subdivisions). The Standing Rock Sioux Tribe (the "Tribe"), the School District, and the State of North Dakota have entered into a "Joint Powers Agreement Between the Standing Rock Sioux Tribe & Fort Yates Public School District No. 4" (hereafter "Agreement") (Doc. #5-2).  Under the Agreement, two school boards - the Fort Yates Public School District #4 and a Tribal Community School Board - operate an elementary school, middle school, and high school within the Standing Rock Sioux Reservation. The purpose of the Agreement is "to combine the educational, social, cultural and physical opportunities of all K-12 students attending the Standing Rock Community School" with the stated goal of improving academic achievement and maximizing student opportunities to succeed after high school.  <u>Id.</u>  Any real property or equipment purchased under the Agreement

is considered joint property of the Tribe and School District, unless otherwise specified.  Id.
There being no evidence in the record to the contrary, it appears the schools subject to the
Agreement sit on land held in trust for the Standing Rock Sioux Indians.

The Complaint in this case alleges C.M.B. and another student, A.K., got into a fight at
school.[1]  A.K. was suspended for 10 days.  C.M.B. obtained a restraining order against A.K.,
which A.K. allegedly violated several months later.  The school suspended A.K. for another 10
days.  Jamie Murphy, on behalf of C.M.B., filed suit in the Standing Rock Sioux Tribal Court
against the School District, alleging (1) breach of the duty to provide a safe learning
environment; (2) negligent hiring/training; and (3) failure to respect a tribal court order and
failure to restrain a known violent student.  Jamie Murphy, on behalf of C.M.B., also filed suit
against Dawn Kelly, the parent of A.K.  The two actions were consolidated in tribal court.

The School District filed a motion to dismiss in tribal court, asserting that the tribal court
lacked jurisdiction over a public school district.  The Standing Rock Sioux Tribal Court denied
the School District's motion, finding it had jurisdiction over the claims.  The School District now
seeks a declaration from this Court that (1) the tribal court lacks jurisdiction over the School
District to decide the underlying claims; and (2) an injunction prohibiting the tribal court from
adjudicating the claims.

### III.    Analysis

A tribal court's exercise of jurisdiction over non-Indians is a federal question answered
by federal law.  Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians, 471 U.S. 845,
852 (1985).  As a general rule, "absent express authorization by federal statute or treaty, tribal

---

[1] Defendant Jamie Murphy contends the "fight" was really a "violent, unprovoked
assault."  (Doc. #32, p. 1).  The Court need not resolve the dispute.

jurisdiction over the conduct of nonmembers exists only in limited circumstances."  Strate v. A-1

Contractors, 520 U.S. 438, 445 (1997).  The United States Supreme Court has carved out two

categories where tribal civil jurisdiction may be exercised over non-Indians/nonmembers even

though Congress has not expressly authorized it: (1) when a nonmember has entered into a

consensual relationship with a tribe or its members, through commercial dealing, contracts,

leases, or other arrangements; or (2) when the nonmember's conduct "threatens or has some

direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

Montana v. United States, 450 U.S. 544, 565-66 (1981).

      Despite the general rule and enumerated exceptions, the scope of tribal civil authority

over nonmembers remains "ill-defined."  Attorney's Process & Investigation Services, Inc. v. Sac

& Fox Tribe of Mississippi in Iowa, 609 F.3d 927, 934 (8th Cir. 2010) (citing Nevada v. Hicks,

533 U.S. 353, 376 (2001) (Souter, J., concurring)).  As noted by the Eighth Circuit:

> The controlling principles are broad and abstract and must be carefully applied to the
> myriad of factual scenarios they govern.  Determining the contours of tribal civil
> jurisdiction and the boundaries of tribal sovereignty requires consideration of the
> historical scope of tribal sovereignty and the evolving place of the tribes within the
> American constitutional order, careful study of precedent, and ultimately a 'proper
> balancing' of the conflicting interests of the tribes and nonmembers.

Attorney's Process, 609 F.3d at 934.

      In order to appreciate the status of the law with regard to tribal court jurisdiction over

nonmembers and understand how it fits with this Court's decision, a brief overview is crucial.  In

1959, the Supreme Court held that a state court lacked jurisdiction over a claim that arose on the

reservation and was brought by a non-Indian plaintiff against tribal members.  Williams v. Lee,

358 U.S. 217 (1959).  Crucial to the reasoning in Williams was the recognition that tribes retain

sovereignty over reservation affairs.  Id. at 223.

Some 20 years later, in Montana, the Supreme Court acknowledged that while tribes retain considerable civil regulatory control over nonmembers on tribal lands within reservation boundaries, they do not have unlimited power to regulate non-Indian fishing and hunting on reservation land owned in fee by nonmembers of the tribe.  Shortly after Montana was decided, the Supreme Court developed, in two cases, the "tribal court exhaustion" doctrine. Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852 (1985); Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18 (1987).  The tribal court exhaustion rule requires nonmembers to exhaust their remedies in the tribal judicial system before they can challenge tribal jurisdiction in federal court.  Neither Nat'l Farmers nor Iowa Mutual addressed whether tribes had adjudicatory authority over cases involving nonmember defendants.

Some scholars believed that the Supreme Court was leaning toward not applying the same presumption against tribal adjudicatory authority that it had applied to regulatory activities in Montana. Krakoff, Sarah, Tribal Civil Judicial Jurisdiction Over Nonmembers: A Practical Guide for Judges, 81 U. Colo. L. Rev. 1187, 2010 WL 4950559 (Fall 2010).  While leaving the issue of tribal courts' civil jurisdiction for another day, the Supreme Court explained:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

Nat'l Farmers, at 855-56.

In 1997, the Supreme Court expressly held, despite the statements in Nat'l Farmers, that the principles set forth in Montana govern whether the tribal court has authority to adjudicate a highway-accident tort suit between non-Indians occurring on a portion of a North Dakota state

5

highway running through the Fort Berthold Indian Reservation.  Strate, 520 U.S. at 442-43.  The Supreme Court adhered to prior precedent limiting tribal civil jurisdiction of nonmembers of the tribe on non-Indian fee lands to controlling provisions in treaties and statutes and the two exceptions identified in Montana.  Id. at 453.

The Supreme Court's two post-Strate cases on tribal civil judicial jurisdiction, while not adopting a categorical prohibition against tribal civil jurisdiction over nonmembers, identify other circumstances in which tribal jurisdiction cannot be exercised.  Nevada v. Hicks, 533 U.S. 353 (2001) (tribal court does not have jurisdiction to adjudicate civil claims against state officials who entered tribal land to execute a search warrant against a tribe member suspected of having violated state law outside the reservation); Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316 (2008) (rejecting tribal court exercise of jurisdiction over a non-Indian bank that had sold land it owned on the reservation to non-Indians).

Despite the emergence of some clarity in the law, the Supreme Court's boundaries for tribal jurisdiction continue to present challenges.  For instance, it remains an open question whether a tribe's adjudicative authority is equal to its regulatory authority.  Elliott v. White Mountain Apache Tribal Court, 566 F.3d 842, 850 n.5 (9th Cir. 2009).  Moreover, the Court in Hicks limited its holding to the issue of tribal court jurisdiction over state officers enforcing state law.  Hicks did not apply the Montana exceptions.  Instead, the Court determined that tribal ownership, alone, was not enough "to support tribal regulatory jurisdiction over nonmembers and analyzed the jurisdictional issue within the context of whether tribal regulatory authority over the state wardens was 'necessary to protect tribal self-government or to control internal relations.'" North Cent. Elec. Co-op, Inc. v. North Dakota Pub. Serv. Comm'n, 837 N.W.2d 138, 144 (N.D.

6

2013) (quoting Hicks, at 360).  With the exception of Hicks, the Supreme Court has applied

Montana "almost exclusively to questions of jurisdiction arising on non-Indian land or its

equivalent."  Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1205 (9th

Cir. 2013).

      With this context in mind, the Court begins with the question of whether the claims

giving rise to the underlying action arose on non-Indian land or its equivalent.  Finding no

evidence to the contrary in the record, the school where the alleged incidents took place, like

many schools on Indian reservations, sits on federal Indian land held in trust for the Standing

Rock Sioux Indians.  While the ownership status of the land is not necessarily dispositive in

determining the propriety of tribal jurisdiction over nonmembers, it is certainly one factor courts

must consider.  Hicks, 533 U.S. at 360.  The situs giving rise to the underlying claims favors

jurisdiction in tribal court.

      Moving on to the specific nature of the claims, the Tribe and School District have entered

into a mutual agreement to fulfill their responsibilities of providing a public education for

children living on or near the reservation.  The School District, a nonmember of the Tribe by

virtue of its status as a political subdivision, contractually agreed to improve the academic

achievement of students by providing improved education services.  The only reason the School

District conducts business on the reservation is because of the contractual arrangement it made

with the Tribe.  Unlike Strate, which involved a "run-of-the-mill" highway accident that was

distinctly non-tribal in nature, or Montana, which involved a tribe's ability to regulate the hunting

and fishing activities of nonmembers, or Plains Commerce Bank, which involved a legal dispute

over the title of land owned by a non-Indian, the claims against the School District involve

7

alleged wrongdoing by another student and School District employees.  The very nature of the type of civil claims in this case put this case outside the reach of current Supreme Court precedent.

Along with these factors listed above, the Court is mindful of two other significant principles that have not been abrogated by the Supreme Court: (1) the federal policy of promoting tribal self-government, which necessarily encompasses the development of a functioning tribal court system, Iowa Mut. Ins. Co., 480 U.S. at 16-17; and (2) because "tribal courts are competent law-applying bodies, the tribal court's determination of its own jurisdiction is entitled to 'some deference.'" Water Wheel Camp Recreational Area, Inc. v. LaRance, 642 F.3d 802, 808 (9th Cir. 2011) (quoting FMC v. Shoshone-Bannock Tribes, 905 F.2d 1311, 1313 (9th Cir. 1990)).  Here, the tribal court has determined that it has jurisdiction over the claims against the School District.  Upon an independent examination of the jurisdictional question, this Court is unable to discern any error in the tribal court's analysis.

Tribal courts are important to the protection of significant tribal interests.  The Court shares the tribal court's concern that if the tribal court lacks jurisdiction over civil claims such as these, tribal members may be left without recourse against non-Indian entities that operate on the reservation when they have legitimate grievances.  Contrary to the School District's contention that the tribal court clearly lacks jurisdiction, the Eighth Circuit has concluded, in the context of a preliminary injunction motion, that "[i]t is not 'plain' that a tribal court lacks authority to exercise jurisdiction over tort claims closely related to contractual relationships between Indians and non-Indians on matters occurring on tribal lands." DISH Network Service L.L.C. v. Laducer, 725 F.3d 877, 885 (8th Cir. 2013).

Upon a complete examination of the case law on tribal civil jurisdiction, the Court finds the framework set forth in Montana does not apply to the underlying claims.  The tribal court ought to be afforded the opportunity and tasked with the responsibility of adjudicating civil problems involving its tribal members against the School District who has entered into a contractual arrangement to collaboratively operate schools on tribal trust land.  "For nearly two centuries now, we have recognized Indian tribes as 'distinct, independent political communities,' qualified to exercise many of the powers and prerogatives of self-government."  Plains Commerce Bank, 554 U.S. at 327 (citations omitted).  There is no indication that the tribal court is ill-equipped or unable to address the alleged wrongdoings by School District employees or other students.  There is also no explanation as to why the School District and its employees, who entered into a joint agreement with the Tribe to conduct business on the reservation, should not be subject to the jurisdiction of the tribal court.

Even if Montana applies to the circumstances in this case, the Court would reach the same conclusion.  Montana grants tribal courts the power to exercise jurisdiction over the activities of nonmembers who enter consensual relationships with the tribes or its members, through commercial dealing, contracts, leases, or other arrangements.  Indisputably the Tribe and School District have entered into a contractual relationship to educate students on the Standing Rock Sioux Indian Reservation.  The facts of this case fit squarely within the circumstances identified by the Supreme Court in Montana.

The Court is unpersuaded by the unpublished decision from the District of Arizona that imposes additional requirements not found in Montana or its progeny.  Red Mesa Unified School Dist. v. Yellowhair, No. CV-09-8071-PCT-PGR, 2010 WL 3855183, **3-4 (D.Ariz. Sept. 28,

9

2010) (finding the first <u>Montana</u> exception only applies to private actors and not governmental actors or political subdivisions). In <u>Red Mesa</u>, two school districts were operating public schools within the boundaries of the Navajo and/or Hopi reservation on tribal trust land leased from the Navajo Nation.  One of the school districts was located solely on the Navajo reservation and the other was located on both the Navajo and Hopi reservations.  That case has an added layer of complexity involving multiple schools on multiple reservations.   <u>Red Mesa</u> makes no mention of a cooperative agreement to educate students.  This fact, alone, likely renders the case inapposite. Further, while the district court concluded that the leases allowing the schools to be placed on tribal land are insufficient to overcome <u>Montana's</u> presumption against tribal jurisdiction, it did so by relying on language not found anywhere in <u>Montana</u> or its progeny.

The Supreme Court in <u>Hicks</u> noted "[w]hether contractual relations between State and tribe can expressly or impliedly confer tribal regulatory jurisdiction over nonmembers - and whether such conferral can be effective to confer adjudicative jurisdiction as well - are questions that may arise in another case, but are not at issue here."  533 U.S. at 372. Contrary to the School District's contention, <u>Hicks</u> did not create a broad-sweeping rule that a state entity or political subdivision can never be sued in tribal.  Moreover, the state interest in <u>Hicks</u> - protecting state law enforcement officers who entered tribal land to execute a search warrant - are very different than the state or tribal interests at stake in this case. Even if <u>Montana</u> applies in this case, the first exception set forth in <u>Montana</u> squarely provides the tribal court with adjudicative jurisdiction over the student and School District's alleged wrongdoing.

IV.     **Decision**

Standing Rock Sioux Tribal Court has jurisdiction to adjudicate claims against the School

District, whether the framework set forth in <u>Montana v. United States</u>, 450 U.S. 544 (1981)

applies or not.  The Court believes the record is sufficiently developed to decide the jurisdictional

issue and, therefore, does so today.

For the reasons stated herein, this action is **HEREBY DISMISSED** and the case is

**REMANDED** to the Standing Rock Sioux Tribal Court for consideration on the merits.  Jamie

Murphy's motion to dismiss under Rule 12(b)(7) is dismissed as moot.

**IT IS SO ORDERED.**

Dated this 4th day of February, 2014.


/s/ Ralph R. Erickson
Ralph R. Erickson, Chief District Judge
United States District Court

11